UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| MELBA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 05-1086 (RMU) |
| | ) | |
| v. | ) | |
| | ) | |
| LAWRENCE M. SMALL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Lawrence M. Small, Director, Smithsonian Institution, respectfully moves for summary judgment pursuant to Rule 56. In this case, Plaintiff alleges employment discrimination on the basis of race and sex, arising out of a vacancy at the National Zoo for a Biologist position. Plaintiff and the selectee for the position were both Zoo employees and they were the only two qualified applicants who interviewed for the position. Plaintiff cannot show that she was so much better qualified than the selectee that "no reasonable person, in the exercise of impartial judgment, could have chosen [the selectee]," over her, per <u>Ash v. Tyson Foods, Inc.</u>, 163 L. Ed. 2d 1053, 1058 (2006). Accordingly, Defendant is entitled to summary judgment.

A memorandum in support of this motion (including a Statement of Material Facts) and proposed order are attached.

June 5, 2006

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov


Of Counsel:
Julie Chen Clocker
Assistant General Counsel
Smithsonian Institution
Washington, D.C.
(202) 633-5112
clockerj@si.edu

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELBA BROWN,        ) | |
|        ) | |
|        Plaintiff,        ) | Civil Action No.: 05-1086 (RMU) |
|        ) | |
|        v.        ) | |
|        ) | |
| LAWRENCE M. SMALL,        ) | |
|        ) | |
|        Defendant.        ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this Title VII case, Plaintiff, Melba Brown, alleges that she was not selected for the

position of biologist, GS-401-9/11, Animal Programs Department, at the Smithsonian

Institution's National Zoological Park ("the Zoo") because of her race (African American) and

sex (female). However, the undisputed facts demonstrate that Plaintiff's non-selection was based

not on race or sex but on a legitimate, non-discriminatory reason--specifically that a panel of

three interviewers (which included an African American female and a white female) gave higher

scores to the only other certified applicant (a white male) on responses to job-related questions

and the selecting official followed the recommendation of the panel. Plaintiff cannot present any

evidence that this reason is pretextual for discrimination. Therefore, Defendant is entitled to

summary judgment.

This memorandum first provides a detailed factual background, and then identifies in the

"Statement of Material Facts not in Genuine Dispute" the key undisputed facts that entitle

Defendant to summary judgment.

**Factual Background**

Plaintiff, an African American female, began employment at the Zoo in 1985 as an Animal Keeper. (Compl. ¶¶ 1,7; see also Report of Investigation ("ROI") Ex. 9 (Melba T. Brown Aff.) ¶ 3, attached hereto as Ex. 1.) Brown was hired by Lisa Stevens, an African American Assistant Curator at the Zoo. (Brown Aff. at 2; Robert King Aff. ¶ 29, attached hereto as Ex. 2; Lisa Stevens Aff. ¶¶ 1, 3, 6, attached hereto as Ex. 3.)

In 2003, while Plaintiff was an Animal Keeper in the Small Mammals Unit, her supervisor, Bob King, a Caucasian male, announced that the current Biologist was about to retire and that they would be filling a temporary detail to the Biologist position until a permanent replacement could be hired. (Brown Aff. at 15; King Aff. at 6.) Plaintiff, along with two other animal keepers from the Small Mammals Unit, applied for the temporary detail. (King Aff. at 6.) One of the other applicants was David Kessler, a Caucasian male who was also an animal keeper. (King Aff. at 7.) Mr. Kessler had been employed at the Zoo since 1978. (Proctor Aff., Attach. C (Kessler application).)

Mr. King considered all three candidates qualified for the temporary detail based on their experience and education. (King Aff. at 6.) However, in addition to filling a vacancy, temporary details were viewed by The Zoo as a way to provide an applicant with an opportunity to gain additional administrative skills beyond their normal duties. (Id.) Mr. King selected Mr. Kessler for the detail because both Plaintiff and the other candidate had already been provided opportunities to acquire such skills and Mr. Kessler had not. (Brown Aff. ¶ 25.a at 34; King Aff. at 7.)

In filling the temporary detail position, Mr. King did not believe that the position would

serve to give the incumbent an advantage in the later process of filling the permanent position. (King Aff. at 7.)  It was not until after the Biologist detail position had been filled that Mr. King began to work to fill the permanent position.  (Id.)  Mr. King revised and updated the position description to reflect the significant change in scope and role that the job would serve since it had last been revised over fifteen years before then.  (Id.).

The qualifications for the permanent position fell into three key components.  The first element is the general husbandry skills and knowledge specific to each of the species in the Small Mammals House.  The second element involves science education and coordination of volunteer interpreters.  The last key element involves biological science including research and professional publications.  (King Aff. at 7; King Depo. at 54, attached hereto as Ex. 8.)

Mr. King managed the drafting and approval of the job announcement and crediting plan for the Biologist position.  (King Aff. at 6.)  Mr. King worked with Scarlitt Proctor (African American female), a Human Resources Specialist for the Zoo, throughout this process.  (King Aff. at 6-7, 11; King Depo. at 54.)

The job announcement for the permanent Biologist position was posted on February 3, 2004, Announcement No. 04SP-1033.  (ROI Ex. 18 (Vacancy Announcement), attached hereto as Ex. 10-B.)  In February 2004, Plaintiff applied for the Biologist position.  (Complaint ¶ 8; Answer ¶ 8.)  On February 23, 2004, Plaintiff and Mr. Kessler were the only two applicants placed on the Certificate of Referral as being qualified and eligible for the position. (Complaint ¶ 9; Answer ¶ 9; King Depo. at 19;  ROI Exh. 15 (Referral Certificate for Federal Position), attached hereto as Ex. 10-A.)

Mr. King believed that the two candidates were both uniquely qualified for the Biologist

3

Position.  As Mr. King explained:

> In terms of experience and qualifications for the permanent position, both Ms. Brown and
> Mr. Kessler had specific strong and unique qualities that qualified them for the position.
> Ms. Brown had significant science education experience that addressed a key element.
> Mr. Kessler had extensive research and published journal experience that addressed
> another key element.  In terms of the third element area, animal husbandry, both
> candidates had almost equal experience.  The experience that Mr. Kessler gained during
> his detail to the Biologist position did not give him any advantage in any of the three key
> element areas.  In addition, the strength of Ms. Brown's application was in no way
> weakened by having not been detailed to the Biologist position.

(King Aff. at 7-8; see also King Depo. at 54.)

The permanent biologist position requires starting the day at 6:30 a.m. to survey the

collection, lead a 6:40 a.m. staff meeting, and manage animal catch-ups that begin around 7:10

a.m. (King Aff. at 8.)  Sometime in 2000, Plaintiff had requested a change to her schedule from

an earlier shift to a 8:00 a.m. to 4:30 pm shift in order to take her daughter to day care.  (Brown

Depo. at 23, attached hereto as Ex. 9.)  Because Mr. King was aware of Plaintiff's scheduling

needs, he asked Plaintiff whether she could work the hours required by the Biologist Position.

(Brown Depo. at 20-22; King Aff. at 8; King Depo. at 36-37.)  Mr. King later learned that

Plaintiff felt that his question had been improper and so he did not follow up.  (King Aff. at 8.)

Mr. King then began to put together an interview panel for the Biologist Position and to

develop a set of interview questions.  (King Aff. at 6; King Depo. at 25.)  As a result of

Plaintiff's concerns about Mr. King's question, which she had raised to a department

administrator at the Zoo, who in turn communicated them to Mr. King, Mr. King and his

supervisors, Jack Grisham and Bill Xanten, in consultation with Ms. Proctor, determined that Mr.

King would not sit on the interview panel.  (King Aff. at 6-10; King Depo. at 49-50.)  The panel

was put together by Mr. King's supervisors in consultation with Ms. Proctor based on

4

availability, experience, and diversity of the panel.  (King Aff. at 12; King Depo. at 50.)

The interview panel consisted of Lisa Stevens, Michael Davenport, and Sara Hallager. (Complaint ¶ 9; Answer ¶ 9.)  Ms. Stevens, Assistant Curator for Primates and Pandas, is an African American female.  (Stevens Aff. ¶¶ 1, 3, 6; Brown Aff. at 2; King Aff. ¶ 29.)  Mr. Davenport, Assistant Curator, Reptiles, is a white male.  (Michael Davenport Aff. ¶ 1, 3, attached hereto as Ex. 7.)  Ms. Hallager, Museum Specialist, Birds, is a white female.  (Sara Hallager Aff. ¶ 1, 3, attached hereto as Ex. 6.)

Mr. King also began drafting a set of interview questions for the panel.  The interview questions were based upon the job description and were balanced to give equal weight to the three main components of the job--animal husbandry, science education, and scientific research and publishing.  (King Aff. at 6-7.)  Mr. King sent draft questions to the panel members and to Ms. Proctor for their review and input.  (King Aff. at 6; Comp. ¶ 11; Answer ¶ 11; King Depo. at 25-27.)  In addition, because Ms. Proctor informed Mr. King that his question to Plaintiff about her ability to work the earlier shift should not have been asked outside of the interview and that it should be asked of all candidates, Mr. King included that question in the list of interview questions.  (King Aff. at 8.)

Mr. King told the panel and his supervisors that he would follow the recommendation of the interview panel for the selection.  (King Aff. ¶ 25.a.)  He did not give them any advice or guidance as to a preference for either candidate. (Id.)

On March 11, the interview panel met with Plaintiff and posed the questions on the list. (Interview score sheets for Brown interview, attached hereto as Ex. 10-D; accord Brown Depo. at 29.)  On March 12, 2004, the interview panel met with Mr. Kessler and asked him the same

questions on the list.  (Interview score sheets for Kessler interview, attached hereto as Ex. 10-E.).
The panel recorded detailed notes of both candidate's responses.  (Exs. 10-D & E.)  Each of the
panel members gave Mr. Kessler higher overall scores than Plaintiff.   (Id.)

Ms. Stevens explained that "although [Plaintiff] had broad base of experience, she failed
to answer questions as thoroughly," and " [s]he did not provide a complete or as well thought
plan for the future of the Small Mammal Unit."   (Stevens Aff. ¶ 15.)  Ms. Hallager similarly
thought that Plaintiff "was unable to satisfactorily answer many of the questions" and "Mr.
Kessler was clearly the more qualified applicant based on his responses to the questions."
(Hallager Aff. ¶ 14.)  Mr. Davenport also found that "Ms. Brown's answers to the interview
questions were not as good as those of the other candidate."   (Davenport Aff. at ¶ 14.)

All three panel members confirmed that no applicants were pre-selected for the position
prior to the interview.   (Stevens Aff. ¶ 11.e; Hallager Aff. ¶ 11g; Davenport Aff. ¶ 11g.)  In
addition, all three panel members confirmed that Plaintiff's race and sex had no relationship to
her non-selection for the Biologist Position.  (Stevens Aff. ¶ 14; Hallager Aff. ¶ 14; Davenport
Aff. ¶ 14.)  Mr. King followed the recommendation of the three-person interview panel in
selecting Mr. Kessler for the position.   (Compl. ¶ 13; Answer ¶ 13.)

## Statement of Material Facts Not in Genuine Dispute

In compliance with Local Rule 7(m), Defendant submits that the following facts are not
in genuine dispute and they demonstrate that Defendant is entitled to summary judgment:

1.     The Plaintiff Melba T. Brown is an African American female.  (Complaint ¶ 1)

2.     At the time of the non-selection at issue in this case, Plaintiff was employed by the
        Smithsonian Institution at its National Zoological Park ("The Zoo") as an animal keeper,

6

WG-5001-9, in the Animal Programs Department, Small Mammal Unit.  (Complaint at ¶¶ 1,7; Brown Aff. ¶ 3.)

3.    Robert King, supervisory biologist (assistant curator), GS-12, at the Zoo, is a Caucasian male and was Plaintiff's first-line supervisor at the time of the non-selection in this case. (King Aff. ¶¶ 1, 3, 7)  Mr. King was the selecting official for the Biologist Position at issue in this case.  (Compl. ¶ 13.)

4.    In February 2004, Plaintiff applied for the position of biologist.  (Compl. ¶ 8; Answer ¶ 8.)  On February 23, 2004, Plaintiff and Mr. Kessler were the only two applicants deemed qualified and placed on the Certificate of Referral.  (Compl. ¶ 9; Answer ¶ 9; King Depo at 19; Ex. 10-A (Referral Certificate for Federal Position).)

5.    Mr. King viewed the biologist position as having three key elements.  The first element is the general husbandry and knowledge of the species worked with.  The second element involves science education and coordination of volunteer interpreters.  The last key element involves strong biological science including research and professional publications.  (King Aff. at 7; King Depo. at 54.)

6.    Mr. King viewed both Plaintiff and Mr. Kessler as having strong and unique qualifications for the Biologist Position.  As Mr. King stated:

> In terms of experience and qualifications for the permanent position, both Ms. Brown and Mr. Kessler had specific strong and unique qualities that qualified them for the position.  Ms. Brown had significant science education experience that addressed a key element.  Mr. Kessler had extensive research and published journal experience that addressed another key element.  In terms of the third element area, animal husbandry, both candidates had almost equal experience. The experience that Mr. Kessler gained during his detail to the Biologist position did not give him any advantage in any of the three key element areas.  In addition, the strength of Ms. Brown's application was in no way weakened by having not

7

been detailed to the Biologist position.  (King Aff. at 7-8; <u>see also</u> King Depo. at 54.)

7.      The permanent biologist position requires starting the day at 6:30 a.m. to survey the collection, lead a 6:40 a.m. staff. meeting, and manage animal catch-ups that begin around 7:10 am.  (King Aff. at 8.)

8.      Sometime in 2000, Plaintiff had requested a change to her schedule from an earlier shift to a 8:00 a.m. to 4:30 p.m. shift in order to take her daughter to day care.  (Brown Depo. at 23.)

9.      Mr. King was aware of Plaintiff's scheduling needs and asked Plaintiff whether she could work the hours required by the Biologist Position to make sure that she understood the shift requirements and would not have to go through the entire process of an interview and selection and find out that she could not work the schedule.  (King Aff. at 8; King Depo. at 36-37.)

10.     Mr. King did not ask David Kessler the same question because Mr. Kessler was already working the 6:30 a.m. to 3:00 p.m. shift. (King Depo. at 36-37.)

11.     The members of the interview panel for the permanent biologist position were Lisa Stevens, Michael Davenport, and Sara Hallager. (Compl. ¶ 9; Answer  ¶ 9.)

12.     Ms. Stevens, Assistant Curator for Primates and Pandas, GS-13, is an African American female.  (Stevens Aff. ¶¶ 1, 3, 6.)

13.     Mr. Davenport, Assistant Curator, Reptiles, is a white male.  (Davenport Aff. ¶ 1, 3.)

14.     Ms. Hallager, Museum Specialist, Birds, is a white female.  (Hallager Aff. ¶ 1, 3.)

15.     Mr. King worked with the three persons on the interview panel to develop a list of

questions which were then submitted to Ms. Proctor for her review.  (King Aff. at 6; Compl. ¶ 11; Answer ¶ 11; King Depo. at 25-27.)

16.    The interview questions were based upon the job description and were balanced as to give equal weight to the different main components of the job--animal husbandry, science education and science.  (King Aff. at 7.)

17.    Because Ms. Proctor informed Mr. King that his question to Plaintiff about her ability to work the earlier shift should not have been asked outside of the interview and that it should be asked of all candidates, Mr. King included that question in the list.  (King Aff. at 8.)

18.    Mr. King told the panel and his supervisors that he would follow the recommendation of the interview panel for the selection.  (King Aff. ¶ 25.a.)

19.    Mr. King did not give them any advice or guidance as to a preference for either candidate. (King Aff. ¶ 25.a.)

20.    On March 11, the interview panel met with Plaintiff and posed the questions on the list. (Compl. ¶ 9; Ex. 10-D; accord Brown Depo. at 29.)  On March 12, 2004, the interview panel met with Mr. Kessler and posed the same questions from the list.  (Ex. 10-E.)

21.    Having asked both Plaintiff and Mr. Kessler the same questions during the interview, the panelists each scored their respective responses.  (Exs. 10-D & E; Davenport Aff. ¶ 15.a.)

22.    Each of the three members of the interview panel scored Mr. Kessler's overall responses higher than those of Plaintiff.  (Exs. 10-D & E.)

23.    All three panel members confirmed that Plaintiff's race and sex had no relationship to her non-selection for the biologist position.  (Stevens Aff. ¶ 14; Hallager Aff. ¶ 14;

9

Davenport Aff. ¶ 14.)

24.    Mr. King followed the recommendation of the three-person interview panel in selecting

Mr. Kessler for the position.  (Compl. ¶ 13; Answer ¶ 13.)

25.    Plaintiff concedes that Question Number 12 was the only question asked during the

interview which she claims was discriminatory.  (Brown Depo. at 31, 33).

26.    Plaintiff concedes that the interview panel's only act during the interview which she

claims was discriminatory was asking Question Number 12.  (Brown Depo. at 39-40.)

<u>**ARGUMENT**</u>

**I.     The Governing Legal Standards**

**A.     The Legal Standard for Summary Judgment**

Summary judgment is appropriate when the record shows that no genuine issue exists as

to any material fact and the moving party is entitled to judgment as a matter of law.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986); <u>Tao v. Freeh</u>, 27

F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists,

the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most

favorable to the non-moving party.  <u>Matsushita</u>, 475 U.S. at 587.  The mere existence of a factual

dispute, however, will not defeat summary judgment.  The non-moving party must show that the

dispute is genuine and material to the case.  That is, the factual dispute must be capable of

affecting the substantive outcome of the case and supported by sufficiently admissible evidence

that a reasonable trier of fact could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-

48; <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring

10

the non-moving party is "merely colorable, or is not significantly probative, summary judgment

may be granted." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "[A]

complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment

as a matter of law.'"  Celotex Corp., 477 U.S. at 323 (citations omitted).

Similarly, mere conclusory allegations are not enough to survive a motion for summary

judgment.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993);  Thrash v. Library of Congress,

2006 U.S. Dist. LEXIS 9988 at *20 (D.D.C. Feb. 24, 2006); Rowland v. Riley, 5 F. Supp. 2d 1,3

(D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which

merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. National

Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")

As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the

existence of an element essential to the party's case, and on which that party will bear the burden

of proof at trial."  Celotex, 477 U.S. at 322.

**B.      The Legal Standard for Proving Discrimination under Title VII**

Claims alleging race and sex discrimination are analyzed pursuant to the familiar burden-

shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, a

plaintiff has the burden of establishing a *prima facie* case of discrimination by a preponderance

of the evidence.  Id. at 802; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53

(1981).  In order to make out a *prima facie* case of discrimination a plaintiff must show that she:

> (i) belongs to a [protected class]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er] qualifications, [s]he was rejected, and (iv) that after h[er] rejection, the position remained open and the employer continued to seek applicant's from persons of [the plaintiff's] qualifications.

411 U.S. at 802. This Circuit generally follows this same four-part test for the *prima facie* case required by McDonnell Douglas. See, e.g., Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149-50 (D.C. Cir. 2004).

In situations where the McDonnell Douglas formulation for the *prima facie* test does not work, the D.C. Circuit uses a more generalized formulation from Stella v. Mineta, 284 F.3d 135 (D.C. Cir. 2002), which requires plaintiff to show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Id. at 145 (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).

In applying the various formulations of the *prima facie* test, the D.C. Circuit frequently distinguishes between "failure to hire" cases and "failure to promote" cases, see, e.g., Teneyck (failure to hire); Taylor v. Small, 350 F.3d 1286, 1294-95 (D.C. Cir. 2003) (failure to promote) Cones, 199 F.3d at 517 (same), but this case is properly viewed as a typical failure to hire case because the position at issue was empty, plaintiff was not simply being promoted within her existing position, and plaintiff had to compete with another applicant for the position. Therefore, the McDonnell Douglas *prima facie* formulation for the "typical failure to hire" case applies.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green,

12

411 U.S. at 802 (1973). The employer's burden, however, is merely one of production. <u>Burdine</u>, 450 U.S. at 254-55. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Id</u>. Once the employer has articulated a legitimate, non-discriminatory reason for its actions, the *prima facie* inference of discrimination drops from the case. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. at 507, 510-11 (1993); <u>Burdine</u>, 450 U.S. at 255.

The burden then shifts back to the plaintiff to show that the employer's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination. <u>Burdine</u>, 450 U.S. at 253; <u>McDonnell Douglas</u>, 411 U.S. at 804; *see also* <u>St. Mary's Honor Center</u>, 509 U.S. at 507-08; <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284, 1289 (D.C. Cir. 1998). The burden of persuasion that discrimination motivated the employer's actions remains at all times with the plaintiff. <u>St. Mary's Honor Center</u>, 509 U.S. at 507; <u>Burdine</u>, 450 U.S. at 253; <u>Aka</u>, 156 F.3d at 1289. Moreover, the plaintiff must present more than a "scintilla of evidence" but must come forward with specific facts that would enable a reasonable jury to find in its favor. <u>Anderson</u>, 477 U.S. at 252; <u>Celotex Corp</u>., 477 U.S. at 324. To prove discrimination on the basis of race and/or sex, the plaintiff must demonstrate that the legitimate, non-discriminatory reasons articulated by the defendant are pretextual.

## II.    Analysis of Plaintiff's Discrimination Claims based on Non-selection

In this case, Plaintiff has clearly established a *prima facie* case of race and sex discrimination. It is undisputed that, as an African-American woman, she is a member of two protected classes. Second, she applied and was qualified for the Biologist position. Third, she

was not selected.  And finally, the Smithsonian did select Mr. Kessler (a white male) for the position.

Defendant, however, has a legitimate, non-discriminatory reason for its selection of Mr. Kessler, specifically that all three members of the interview panel rated Mr. Kessler's answers superior to those of Plaintiff.  (Exs. 10-D & E.)  The panel unanimously recommended Kessler over Plaintiff based on their respective interviews.  (Hallager Aff. at 3-5, Stevens Aff. at 2-5; Davenport Aff. at 3-5.)  The selecting official, Mr. King, viewed the two as roughly equal on paper, and thus decided to follow the recommendation of the interview panel, and thus, after the panel made its recommendation, Mr. King did just that and selected the candidated recommended by the panel.  (King Aff. at 7-8; King Depo. at 54.)

Further weighing against any inference of discrimination is the diversity of the interviewing panel: two members are the same sex as Plaintiff and one member is the same race.  See Walker, 94 F. Supp. 2d at 16 (finding no inference of pretext where one of the three panel members who ranked the applicants was of the same protected class as plaintiff); Horvath v. Thompson, 329 F. Supp. 2d 1, 5 (D.D.C. 2004) (harder to establish gender discrimination when selecting official is same gender as plaintiff).  Indeed, Ms. Stevens, the African American female member of the panel, was responsible for the initial hiring of Plaintiff as an animal keeper to the Zoo in 1985.

### III.    Plaintiff Cannot Show That the Smithsonian's Reasons for Non-selection Are Pretextual

In response to the legitimate non-discriminatory reason for her non-selection to the Biologist Position, Plaintiff will likely attempt to show pretext by claiming (1) that she was more

qualified than Mr. Kessler, (2) that the selecting official, Mr. King, exhibited racial and sexual

bias by asking her about her ability to work an earlier shift required of the Biologist Position in

light of her child care responsibilities and by showing her announcements for other jobs, and

(3) that Mr. Kessler had been "pre-selected" for the Biologist Position by having been detailed in

that position for the prior eight months and that the interview process was somehow biased.  As

explained below, however, none of these claims create a genuine issue of material fact to

preclude summary judgment.

###    A.    Plaintiff's Subjective Belief About Her Own Qualifications Does Not Demonstrate Pretext.

A plaintiff cannot satisfy her burden of demonstrating pretext "simply based on [her] own

subjective assessment of [her] own performance."  Waterhouse v. District of Columbia, 124 F.

Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989 (D.C. Cir. 2002) (citing Smith v. Chamber of

Commerce of the United States, 645 F. Supp. 604, 608 (D.D.C. 1986)).  A plaintiff has the duty

to put forth evidence of discrimination, not to "quibble about the candidates' relative

qualifications."  Vasilevsky v. Reno, 31 F. Supp. 2d 143, 150 (D.D.C. 1998).  In the absence of

any other evidence that would allow a jury to infer that discrimination took place, "slight

questions of comparative qualifications do not warrant a jury trial."  Walker v. Dalton, 94 F.

SUPP. 2d 8, 16 (D.D.C. 2000).   The court must respect the employer's unfettered discretion to

choose among qualified candidates.  "Title VII, it bears repeating, does not authorize a federal

court to become 'a super-personnel department that reexamines an entity's business decisions.'"

Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune

Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied, 479 U.S. 1066 (1987)).

15

Moreover, even if a plaintiff could show superior qualifications to the person selected, "the D.C. Circuit has recognized that courts 'may not "second-guess" an employer's personnel decision absent demonstrably discriminatory motive.'" Woodruff v. DiMario, 164 F. Supp 2d 1, 16 (D.D.C. 2001) (internal citations omitted), aff'd, No. 01-5321, 2002 WL 449776 (D.C. Cir. Feb 21, 2002). The U.S. Supreme Court recently cited with approval this Circuit's standard that superior qualifications may be probative of pretext if "a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job." Ash v. Tyson Foods, Inc., 163 L.Ed. 2d 1053, 1058 (2006) (emphasis supplied) (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)). The Supreme Court also cited with approval the Eleventh Circuit's standard for pretext that "disparities in qualifications must be of such weight and significance *that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff* for the job in question." Id. (emphasis supplied) (citing Cooper v. Southern Company, 390 F.3d 695 (11th Cir. 2004)). The Court also cited a Ninth Circuit formulation of the standard, which permits an inference of pretext where the plaintiff's qualifications are "clearly superior" to those of the individual selected. Id. (citing Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003)[1]).

Under any of these formulations of the standard, no such disparity exists in this case. All evidence shows that Plaintiff and Mr. Kessler had roughly equal qualifications on paper and that Mr. Kessler interviewed significantly better than Plaintiff. The best that Plaintiff can do is to point to the edge the selecting official gave her with respect to science education, (King Aff. at 7-

---

[1] Opinion amended on rehearing, No. 00-35999, 2003 WL 21027351 (9th Cir. May 08, 2003).

16

8; King Depo. at 54), but this was indisputably offset by Mr. Kessler's advantage in pure science, (id.). The undisputed evidence simply cannot be read to support the contention that Plaintiff was so much more qualified than Mr. Kessler that no rational jury could believe that a reasonable employer must have selected Plaintiff over Mr. Kessler.

The evidence throughout this case is consistent with this assessment. For example, both Plaintiff and Mr. Kessler were certified as qualified for the position. Both were employed in the Small Mammal Unit as animal keepers at the WG-9 level, and both had extensive experience relevant to the position of biologist. Plaintiff has been employed at the Zoo since 1985, and Mr. Kessler has worked at the Zoo since 1978. Plaintiff has a bachelors degree in Zoology and Mr. Kessler has a bachelors degree in Biology. Plaintiff has taken additional (nongraduate) courses in horticulture while Mr. Kessler has completed graduate coursework towards a Ph.D. Indeed, Mr. King, the selecting official, viewed the two candidates as both being uniquely qualified for the biologist position, and he consistently viewed Plaintiff as having stronger qualifications in science education and Mr. Kessler as having stronger qualifications in science, with the two of them having equal strengths in animal husbandry. Plaintiff has presented no evidence, other than her own subjective belief, that she was more qualified than Mr. Kessler for the Biologist position. Therefore, she has fallen far short of producing admissible evidence that she was so much more highly qualified than Mr. Kessler that no reasonable employer should have selected him over her, per Ash v. Tyson Foods. Accordingly, Defendant is entitled to summary judgment.

**B.    The Actions of Mr. King Were Devoid of Discriminatory Animus.**

Plaintiff may also attempt to show pretext by pointing to actions by Mr. King, her immediate supervisor and the selecting official in this case. Specifically, Plaintiff claims that Mr.

17

King's actions in inquiring about whether or not she could work the shift required of the Biologist Position in light of her child care responsibilities and in bringing to her attention job announcements for positions other than the Biologist Position are evidence of such pretext. Neither, however, is sufficient to defeat summary judgment.

First, Mr. King's inquiry into whether she could work certain hours required of the Biologist Position is devoid of gender or racial animus.  The Biologist Position required that the new biologist work from 6:30 a.m. to 3:00 pm.  (King Aff. at 8.)  It is undisputed that Plaintiff, at the time, was working an 8:00 a.m. to 4:30 p.m. shift, a change she requested in or around 2000 so that she could take her daughter to day care.  (Brown Depo. at 23-24.)  Mr. King was aware of this accommodation and concedes that he asked Plaintiff whether she could work the earlier shift in light of her day care needs to make sure that she understood the shift requirements and would not have to go through the entire process of an interview and selection and find out that she could not work the schedule.  (King Aff. at 8; King Depo. at 36-37.)  Mr. King did not ask Mr. Kessler the same question because Mr. Kessler was already working the 6:30 a.m. to 3:00 p.m. shift.  (King Depo. at 36-37.)  There is no evidence to show any race-based or sex-based bias from Mr. King's inquiry into Plaintiff's availability for the 6:30 a.m. shift.

Similarly, the simple fact that Mr. King may have brought job announcements outside of the Zoo to Plaintiff's attention is probative of neither sex nor race discrimination.  Rather, Mr. King testified that he did so only because he was aware that Plaintiff had an interest in education and that she wanted to pursue more education-oriented opportunities.  (King Depo. at 31, 34.)  Believing he was helping an employee foster her expressed interest, Mr. King brought to Plaintiff's attention job announcements he came across that had an educational focus, as he has

18

done with other employees who expressed an interest in pursuing other interests.  (King Depo. at 34-35.)  Although Plaintiff does not recall whether she specifically made Mr. King aware of the fact that she was interested in other jobs, she admits that she was "putting out feelers" for "other employment opportunities."  (Brown Depo. at 15.)  Moreover, when Mr. King brought such announcements to Plaintiff's attention, Plaintiff admits that she never conveyed to Mr. King that she was put off by his actions.  (Brown Depo. at 16, 19-20.)

In short, there is nothing in Mr. King's actions alone from which discriminatory animus may be inferred.  Plaintiff's belief that they may have been related to her gender or race is nothing short of speculation that is not a sufficient basis for opposing a motion for summary judgment.  See McGill v. Munoz, 203 F.3d 843, 846 (D.C. Cir. 2000) (speculation insufficient to avoid summary judgment).

### C.    There Is No Evidence That The Interview Process Was Pretextual.

Finally, Plaintiff may argue that her non-selection for the Biologist Position was based on her race and gender by claiming that Mr. Kessler had an advantage by having been detailed in the temporary biologist position for eight months and that the interview questions were biased in favor of Mr. Kessler.  The undisputed evidence, however, shows that Mr. Kessler obtained no advantage by having been detailed in the temporary position and that the interview process lacked any discriminatory bias.

First, while Plaintiff may argue that the temporary detail gave an advantage to Mr. Kessler for the permanent position, she can present no evidence to support that allegation. Rather, the undisputed evidence shows that the temporary detail did not serve as a pre-selection for the permanent Biologist Position.  As Mr. King explained, the purpose of the temporary detail

19

was to give the recipient a chance to develop or acquire administrative skills outside of their normal duties. (King Aff. at 6.)  Because the other two candidates for the detail (including Plaintiff) had already been provided opportunities to develop such skills, and Mr. Kessler had not, Mr. Kessler's appointment was in keeping with the Zoo's goal of professional growth for its staff.  (King Aff. at 7.)  Indeed, Plaintiff acknowledges that she had been previously detailed as a Collection Manager for the Small Mammal Unit, that she was at one time Mr. Kessler's supervisor, and that she has not known Mr. Kessler to have had a managerial role at the Zoo. (Brown Aff. ¶ 25.a at 34.)  Plaintiff also acknowledges that after the appointment of Mr. Kessler to the temporary detail, Mr. King "clearly stated that David Kessler's appointment would not have any bearing on the final position or affect my standing as far as the final position was concerned."  (Brown Aff. at 15.)

In addition to the fact that the purpose of the detail was to provide opportunities for professional growth and not, as Plaintiff suggests, to pre-select a candidate for a permanent position, Mr. Kessler's detail did not in fact provide him with a greater advantage because the scope and role of the permanent biologist was different than that of the detail.  Mr. King selected Mr. Kessler for the temporary detail *before* he began the process of recruiting for the permanent Biologist Position.  (King Aff. at 7.)  It was not until months later that Mr. King began revising and updating the position description to reflect the significant changes in scope and role for the permanent biologist position, whose position description was last revised more than 15 years earlier.  (Id.)

Ultimately, Plaintiff can present no evidence of *discriminatory* bias in the selection of Mr. Kessler to the detail.  Even were Plaintiff's non-selection to the detail position at issue in this

case, which it is not, Plaintiff can do no more than "quibble about the candidates' relative qualifications." Vasilevsky v. Reno, 31 F. Supp. 2d at 150. As with the selection to the permanent Biologist Position, Plaintiff cannot establish pretext. "simply based on [her] own subjective assessment of [her] own performance." See Waterhouse v. District of Columbia, 124 F. Supp. 2d at 7.

Similarly, there is no evidence that the interview process itself was a pretext for discrimination. Mr. King worked by consensus with his supervisors, Jack Grisham and Bill Xanten, and Ms. Proctor, the Human Relations Specialist for the Zoo, to put together a three-person interview panel. (King Aff. at 6-7, 10-12; King Depo. at 49-50, 54.) The panel was selected based on their availability, experience and diversity. (King Aff. at 12; King Depo. at 50.) Mr. King drafted the initial set of interview questions based on the job description, giving equal weight to the three areas of husbandry, science education and science, and shared it with the panel members for their comments. (King Aff. at 6; Compl. ¶ 11; Answer ¶ 11; King Depo. at 25-27.) Throughout this process, Mr. King worked in close consultation with Ms. Proctor to ensure that the process complied with Smithsonian policies. (King Aff. at 6; Compl. ¶ 11; Answer ¶ 11; King Depo. at 25-27.)

Although Mr. King was the selecting official, he informed his supervisors and the interview panel that he would follow their recommendation for his selection. (King Aff. ¶ 25.a.) At no time did he give them guidance as to a preference for either candidate, and each member of the interview panel confirmed that no applicant had been pre-selected for the position. (Stevens Aff. ¶ 11.e; Hallager Aff. ¶ 11.g; Davenport Aff. ¶ 11.g.) In addition, all members of the panel confirmed that neither the Plaintiff's sex or race had anything to do with her non-selection.

21

(Stevens Aff. ¶ 14; Hallager Aff. ¶ 14; Davenport Aff. ¶ 14.)

In her deposition, Plaintiff concedes that, other than question number 12, which was a question concerning an applicant's ability to work the earlier shift, there were no other questions asked during the interview that she alleges was discriminatory.  (Brown Depo. at 31, 33.)  And with respect to the interview panel itself, Plaintiff again concedes that their only allegedly "discriminatory" act was in having asked question number 12.  (Brown Depo. at 39-40.) Question number 12, however, was posed to both Plaintiff and Mr. Kessler and both candidates received the maximum score of 5 by all panel members. (Exs. 10-D & E.)  Because Plaintiff cannot produce any evidence that the interview panel gave her a lower score on the interview questions because of her race or gender, Plaintiff cannot prevail on her burden of proof.

## CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment should be granted.

June 5, 2006

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov


Of Counsel:
Julie Chen Clocker
Assistant General Counsel
Smithsonian Institution
Washington, D.C.
(202) 633-5112
clockerj@si.edu

23

**Exhibit List**

1.      Affidavit of Melba Brown, dated September 29, 2004, and Supporting Attachments and Compensatory Damages (ROI Ex. 9)

2.      Affidavit of Robert King, dated September 30, 2004, and attachments (ROI Ex. 11)

3.      Affidavit of Lisa Stevens, dated October 1, 2004 (ROI Ex. 12)

4.      Affidavit of Scarlitt Proctor, dated October 22, 2004 (ROI Ex. 13)

5.      Rebuttal Affidavit of Melba Brown, dated November 8, 2004, and attachments (ROI Ex. 14)

6.      Affidavit of Sara Hallager, dated November 29, 2004 (ROI Ex. 19)

7.      Affidavit of Michael Davenport, dated December 1, 2004 (ROI Ex. 20)

8.      Excerpts from Transcript of Deposition of Robert King, taken April 6, 2006

9.      Excerpts from Transcript of Deposition of Melba Brown, taken April 13, 2006

10.     Declaration of Scarlitt Proctor, dated May 26, 2006, with attachments

        A.      Referral Certificate for Federal Position and Selection (bate-stamped No. SI0003) (ROI Ex. 15)

        B.      Biologist Vacancy Announcement, GS-0401-9/11, Announcement No. 04SP-1033 (bate-stamped Nos. SI0042-SI0043) (ROI Ex. 18)

        C.      Application of David S. Kessler for Biologist Vacancy Announcement, GS-0401-9/11, Announcement No. 04SP-1033 (bate-stamped Nos. SI0006-SI0020)

        D.      Interview Score Sheets for Melba Brown, dated March 11, 2004 (ROI Ex. 16)

        E.      Interview Score Sheets for David Kessler, dated March 12, 2004 (ROI Ex. 17)