UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELBA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 05-1086 (RMU) |
| LAWRENCE M. SMALL, ) | |
| Secretary, Smithsonian Institution, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant's opening brief ("Def. Br.") demonstrated that Plaintiff's non-selection for the Biologist Position was based upon a legitimate, non-discriminatory reason: the selecting official followed the unanimous recommendation of a racially diverse interview panel, composed of men and women, which gave higher scores on responses to job-related questions to the only other certified applicant (Mr. Kessler).  Plaintiff's opposition brief ("Pl. Br.") offers nothing to rebut this showing.  Indeed, Plaintiff concedes the material facts identified in Defendant's Statement of Material Facts Not In Genuine Dispute ("Def. Statement").  <u>See</u> Def. Br. at 6-10.  These facts establish beyond doubt that no discrimination occurred, and compel entry of summary judgment. Plaintiff also offers no additional facts or arguments suggesting that Mr. Kessler was selected for any reason other than his qualifications.  Indeed, Plaintiff barely addresses her own qualifications, leaving her discussion of that point to the last paragraph of her brief.  In the end, Plaintiff offers theories and speculation, which, unsupported by record evidence, cannot defeat summary judgment.  The parties have completed discovery and Plaintiff has no evidence to

support her claims.  Defendant's motion should be granted.

## ARGUMENT

I.  **The Uncontroverted Facts Identified in Defendant's Statement of Material Facts Compel Entry of Summary Judgment.**

    A.  **Plaintiff Has Conceded the Facts in Defendant's Statement.**

Plaintiff's failure to controvert the facts identified in Defendant's Statement means those facts are deemed admitted for purposes of adjudicating Defendant's motion.  Under Local Rule 7(h), a party opposing summary judgment must submit a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," with supporting references to the record.  See Local Rule 7(h).  "In determining a motion for summary judgment," the Rule instructs, "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Id.

The D.C. Circuit has made clear that, "[i]f the party opposing the motion fails to comply with this local rule, then 'the district court is under no obligation to sift through the record' and should 'instead . . . deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7(h)] statement.'"  Securities and Exch. Comm'n v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000) (internal citation omitted) (alteration in original).  This Court "*strictly adheres* to the text" of the local rules governing summary judgment practice," Turner v. District of Columbia, 383 F. Supp. 2d 157, 165 (D.D.C. 2005) (Urbina, J.) (emphasis in original), and "*will assume* 'that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition

to the motion.'" Id. (emphasis added) (quoting local rule).

Although Plaintiff styled her Statement as a "Statement of Material Facts As To Which There Is A Genuine Issue" ("Pl. Statement"), Plaintiff's statement does not controvert any facts identified in Defendant's statement, nor does her Statement identify any "genuine issue necessary to be litigated" according to Local Rule 7(h).  Instead, each of the paragraphs in Plaintiff's Statement are stand-alone factual assertions with little or no connection to the facts detailed in Defendant's Statements.  Thus, what Plaintiff essentially submitted was a moving-party's Rule 7(h) statement, setting forth additional facts which Plaintiff contends are not disputed, as if she were moving for summary judgment (which she is not).  See Pl. Statement.  And while it is also true, as we explain in Part II *infra* that the facts asserted in Plaintiff's Statement are neither material nor relevant, the important point here is that, by failing to controvert the facts identified in *Defendant's* Statement with evidence, Plaintiff has, under clearly established case law, admitted Defendant's facts for purposes of resolving Defendant's motion.  See, e.g., Local Rule 7(h); Banner Fund, 211 F.3d at 616; Turner, 383 F. Supp. 2d at 165.

The undisputed material facts identified in Defendant's Statement make clear that Defendant is entitled to summary judgment as a matter of law.  Those facts establish, among other things, that Mr. King (the selecting official) viewed both Plaintiff and Mr. Kessler as having strong and unique qualifications for the Biologist Position; see Def. Statement, ¶ 6 (Def. Br. at 7-8); that Mr. King told his supervisors he would follow the recommendation of the three-person interview panel in making his selection; see id. ¶ 18 (Def. Br. at 9); that each member of the panel scored Mr. Kessler's overall responses to the same questions higher than Plaintiff's overall responses; see id. ¶ 22 (Def. Br. at 9); that no member of the interview panel considered

Plaintiff's race or sex in scoring the candidate's responses; see id. ¶ 23 (Def. Br. at 9-10); and that Mr. King, consistent with his prior decision, followed the recommendation of the interview panel and selected Mr. Kessler for the position.  See id. ¶ 24 (Def. Br. at 10).  These undisputed facts compel entry of summary judgment.

> B. **Even Putting Local Rule 7(h) Aside, Plaintiff Has Not Established That Any Of The Material Facts In Defendant's Statement Are Disputed.**

Even if the Court looks beyond Plaintiff's Statement, and, contrary to Rule 7(h), considers arguments in Plaintiff's brief about the facts identified by Defendant, Plaintiff still only purports to address a few of the facts in Defendant's Statement.  And even with respect to those facts, Plaintiff has not established with record evidence that they are in genuine dispute.

> a.  For example, Plaintiff contends that one member of the interview panel — Lisa Stevens, an African American female — "may . . . be inclined to racially discriminate against an applicant" who "threatens" her so-called "unique position in the Zoo's management hierarchy." Pl. Br. at 8; compare Def. Statement ¶ 23 (Def. Br. at 9-10).  But this assertion is not supported by any evidence or citation to the record.  To defeat this summary judgment motion, Plaintiff must offer something "beyond her own speculations and allegations'" Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999).  Indeed, contrary to Plaintiff's speculation, courts view diversity in an interview panel as a factor weighing *against* any inference of discrimination.  See Def. Br. at 14 (citing cases); see also Brown v. Small, --- F. Supp. 2d ---, No. 04-1134 (RBW), 2006 WL 1888562, 2006 U.S. Dist. LEXIS 46069 at *28 (D.D.C. July 7, 2006) ("[t]he diverse composition of the panel bolsters the conclusion that they were seeking 'the candidate who was most qualified for the position and that race and gender were not factors in their decision-making process'")

(quoting Reid v. Mich. Dep't of Corrections, 101 Fed. Appx. 116, 120 (6th Cir. 2004)).

That Ms. Stevens sat on interview panels relating to other positions for which Plaintiff was not selected (see Pl. Br. at 7-8) does not create an inference that she "racially discriminate[s]" (id. at 8) against Plaintiff. In fact, as Plaintiff previously has acknowledged, Ms. Stevens was involved in hiring her at the zoo. See Def. Ex.[1] 5 at 7 ("Subsequent to hiring Ms. Brown, Ms. Stevens . . . ."); see also Def. Ex. 3 at ¶ 6. The other panel members, moreover, expressly stated under penalty of perjury that Ms. Stevens did not exhibit any bias against Plaintiff. See Def. Ex. 6 at 2, ¶ 11.e; id. at 4, ¶ 14.E.2; id. at 5, ¶ 14.E.3 (Affidavit of Sara Hallager) ("Hallager Aff."); Def. Ex. 7 at 2, ¶ 11.e; id. at 4, ¶¶ 14.E.2, 14.E.3 (Affidavit of Michael Davenport) ("Davenport Aff."). Plaintiff does not challenge those statements. Indeed, Plaintiff did not even depose Ms. Stevens or any of the other panel members.

b. Plaintiff discusses, see Pl. Br. at 13-14, but ultimately does not take issue with, Defendant's assertion that Mr. King told the interview panel and his supervisors that he would follow the panel's recommendation for the selection. See Def. Statement ¶ 18 (Def. Br. at 9). Mr. King has testified or made sworn statements on this point. See King Depo. at (attached hereto as Ex. 11); Def. Ex. 2 at 11, ¶ 25.a. There is no contrary evidence.[2] Plaintiff's unsupported claim that "the record is silent" (Pl. Br. at 13) as to when the panelists conveyed

---

[1] References to "Def. Ex." are to the exhibits attached in support of Defendant's opening brief. References to "Pl. Ex." are to the exhibits attached in support of Plaintiff's opposition brief.

[2] Plaintiff's assertion (see Pl. Br. at 13) that, *if* the panel had recommended Plaintiff, then Mr. King could have ignored that recommendation and selected Mr. Kessler anyway, is both hypothetical and irrelevant. The "truth of the matter" (id.) is that the panel recommended Mr. Kessler and Mr. King selected him.

their recommendation to Mr. King is wrong, see King Depo. at 46-47 (attached hereto as Ex. 11), as is Plaintiff's unsupported suggestion that there is no written record of the panelists' comments and impressions.  See Def. Ex. 10-D (interview score sheets containing extensive hand-written notes from the interviews).[3]

It bears emphasizing that the lack of any evidence of bias or discriminatory motive on the part of the interview panel, combined with Mr. King's decision to accept the panel's recommendation, is *fatal* to Plaintiff's claim.  It is incontestible that the panel unanimously scored Mr. Kessler higher than Plaintiff.  See Def. Ex. 10-D.  It follows, *a fortiori*, that Mr. King's actual acceptance of the panel's recommendation, consistent with his prior decision to do so, could not have been the product of discrimination.  There is no basis, therefore, for the Court to "reexamine" Defendant's selection of Mr. Kessler.  See, e.g., Stewart v. Ashcroft, 352 F.3d 422, 429 (D.C. Cir. 2003) (courts are not "'superpersonnel departments that reexamine[] an entity's business decisions'") (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) (alteration in original)).

c.  Plaintiff also addresses Defendant's assertion that Mr. King "worked with the three persons on the interview panel to develop a list of questions which were then submitted to Ms. Proctor [a Human Resource Specialist at the Zoo] for her review," Def. Statement ¶ 15 (Def. Br. at 8-9), calling it a "gross factual misstatement[]."  Pl. Br. at 8-9.  But there is no real dispute

---

[3] Plaintiff attempts (without support) to read something ominous into the fact Mr. King met with the interview panelists prior to Plaintiff's interview.  See Pl. Br. at 9.  As Mr. King testified, he met with the panel to give the members "a packet" of information (the interview questions, the position description, and the announcement), to "advise[] them that [he] was going to follow their advice," and to "ask[] them to do their best."  See King Depo. at 45 (attached as Ex. 11 hereto.

between the parties. Plaintiff acknowledges Mr. King solicited input from the panel members (see Pl. Br. at 8; Pl. Ex. 2; Def. Ex. 8 at 25, 27),[4] and Mr. King has stated, without contradiction, that he submitted the questions to Ms. Proctor for review, and that she suggested changes which he incorporated. See Def. Ex. 8 at 25-27.[5] There is no record evidence that any panel member objected to the interview questions or to Mr. King's handling of any part of the interview or panel selection process. To the contrary, each of the panel members stated, without contradiction, that the process was consistent with the Zoo's standard practice. See Def. Ex. 3 at 2, ¶ 11.c (Affidavit of Lisa Stevens) ("Stevens Aff."); Hallager Aff. at 5, ¶ 15; Davenport Aff. at 5, ¶ 15.

     d.  Plaintiff also addresses Defendant's assertion that Mr. King was aware of Plaintiff's scheduling needs (due to child care responsibilities), and that he asked Plaintiff whether she could work the hours required by the Biologist Position to make sure she understood the shift requirement, which would have required a change in Plaintiff's work hours. See Def. Statement ¶ 9 (Def. Br. at 8). Plaintiff adds an additional assertion on this point (see Pl. Statement Br. ¶ 5; Def. Br. at 15-16, 19), but does not dispute with record evidence the facts identified by

---

[4] See also Def. Ex. 3 at 2, ¶ c. As part of this give and take, one panel member e-mailed Mr. King and asked for a position description. See Pl. Ex. 3 ("Bob, is it possible to get a copy of the job description or a list of proposed duties? Mike"). Plaintiff's characterization of this request as "desperate[]" (Pl. Br. at 8) shows the lengths to which Plaintiff will go to mischaracterize the evidence.

[5] Plaintiff asserts that "King got no input from Proctor on the last two questions that he added because Proctor did not respond to his email request until one hours [sic] after Brown's interview had begun." Pl. Statement ¶ 9. What Plaintiff neglects to say is that Ms. Proctor's response to Mr. King was "Looks good!" See Pl. Ex. 8.

Defendant.[6] Nor does Plaintiff dispute that Mr. King did not follow up with Plaintiff once he heard Plaintiff felt his "questioning had been improper." See Def. Ex. 2 at 8, ¶ 17.n. Indeed, on advice of Ms. Proctor, Mr. King included a question about shift availability as one of the 15 questions put to both candidates in the Biologist Position interview. See id. at 8, ¶ 17.o. Both candidates stated they could work the required shift, and received the same score (5 out of 5) from each panel member on this question. See Def. Ex. 10-D. Mr. King, of course, recused himself from the interview panel out of an abundance of caution because of Plaintiff's concerns, see Def. Ex. 2 at 10, ¶ 21.a, and decided to defer to the panel's recommendation. See id. at 11, ¶ 25.a.

 e. Finally, Plaintiff attempts to take issue with Defendant's statement that Mr. King "viewed the biologist position as having three key elements," with the third element "involv[ing] strong biological science including research and professional publications." See Def. Statement ¶ 5 (Def. Br. at 7). As explained in Defendant's opening brief, Mr. King viewed Mr. Kessler as having superior experience with respect to this element. See Def. Br. at 7; see also Def. Ex. 2 at 7; Def Ex. 8 at 54. He viewed Plaintiff as having superior experience with respect to the second element (science education and coordination of volunteer interpreters), and both candidates as having equal experience with respect to the first element (general husbandry and knowledge of the species worked with). See id.

---

[6] Plaintiff asserts that "Defendant's proffered non-discriminatory reason for questioning Brown about her ability to or willingness to work an earlier 6:30 a.m. shift is a pretext." Pl. Br. at 19. There is no evidence for this. There is no dispute that 6:30 a.m. was the required shift for the Biologist Position (see Def. Ex. 8 at 35-36), or that the person acting in the biologist position at the time Plaintiff applied was working that shift. See id. at 38. Nor is there any dispute that Plaintiff stated she *could* work the 6:30 a.m. shift. See Def. Ex. 10-D. Again, Plaintiff's "speculations and allegations," Brown, 199 F.3d at 458, cannot defeat summary judgment.

There is no dispute, however, that Mr. King himself "viewed" the position as having these three key elements. He has testified and made sworn statements to this effect (see Def. Ex. 8 at 54; Def. Ex. 2 at 7), and there is no contrary evidence. Plaintiff suggests (Pl. Br. at 22-23; Pl. Statement ¶ 3) that Mr. King's "view" of the position as having a science/research component as one of the key elements is somehow inconsistent with the actual position description. But that is not so. The "Introduction" section of the position description states: "Primary function of this position is to serve as a biologist for the Small Mammal House collection and involves the care, breeding, conservation, exhibition, collection planning and *support of research* for rare and endangered species of small mammals[.]" See Def. Ex. 1, Report of Investigation ("ROI"), Ex. 24 to ROI, at 1 (emphasis added). Virtually identical language appears in the first sentence of the Vacancy Announcement under the section labeled "Major Duties." See Def. Ex. 10-B. The position description also describes, in a section labeled "Major Duties," research-related duties. See, e.g., Ex. 24 to ROI, at 2 ("Provides assistance for research conducted in collaboration with scientists from within and outside the Institution"). Plaintiff cannot create a dispute of fact by misstating the text of documents in the record.[7] See Fed. R. Civ. P. 56(c) (court must grant

---

[7] This is a pattern in Plaintiff's opposition. For example, Plaintiff suggests that the research element was not a part of the position description until Mr. King updated the description prior to announcing the vacancy for which Plaintiff applied. See Pl. Br. at 20, 22. But the sentence quoted above — describing "support of research" as a "[p]rimary function" of the biologist position — appears in the prior version of the position description. See Pl. Ex. 16 at 1. Plaintiff also contends (Pl. Br. at 22, 23) that the research-related duties were applicable only to candidates applying at the GS-11 level, and not to candidates (like Plaintiff and Mr. Kessler) applying at the GS-9 level. See also Pl. Statement ¶¶ 3, 15. But again, the sentence describing "support of research" as a "[p]rimary function" of the biologist position applied to candidates at both Grades, see Def. Ex 1 (Ex. 24 to ROI, at 1), as did the sentence describing a "[m]ajor [d]ut[y]" of the position as "[p]rovid[ing] assistance for research conducted in collaboration with scientists from within and outside the Institution." See id. at 2. Moreover, while it is true that one of the research-related duties applied only to candidates applying at the GS-11 Grade, see Ex.

summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law").

In short, there simply is no evidence that Mr. King's view of the biologist position, or the position description itself, was in any way the product of discrimination against Plaintiff. "[A]bsent a 'demonstrably discriminatory motive,' this Court must defer to the agency's decision of what non-discriminatory qualities it deemed necessary in filling the" Biologist Position. Brown, 2006 U.S. Dist. LEXIS 46069 at *19 (internal citation omitted).  For all of these reasons, the undisputed facts identified in Defendant's Statement compel entry of summary judgment.

**II.     PLAINTIFF'S OTHER ARGUMENTS ARE BASED ON FACTS THAT ARE EITHER IRRELEVANT, IMMATERIAL, OR NOT SUPPORTED BY THE RECORD.**

Plaintiff raises various other arguments in an attempt to stave off summary judgment. None of these arguments has merit, and are dealt with briefly below.

a.  Qualifications.  Although Plaintiff has argued throughout this litigation that she is more qualified than Mr. Kessler for the Biologist Position, see, e.g., ROI, Affidavit of Melba T. Brown, at 11; Def. Ex. 5 at 5, she leaves this argument to the last paragraph of her brief. See Pl. Br. at 24.  Moreover, the only item Plaintiff mentions — graduate class work — favors Mr. Kessler.  See Def. Br. at 17.  Plaintiff makes no real effort to show that "no reasonable person, in the exercise of impartial judgment, could have chosen [Mr. Kessler] over [her]." See Ash v.

---

24 to ROI at 2 (first red highlight), attached hereto as Ex. 12, one of the volunteer-related duties (the element at which Plaintiff excelled) also applied only to GS-11 candidates. See id. (second red highlight).  Note that if the redline is hard to see in a hard-copy printed copy, it will show up more clearly by viewing the pdf file directly on a color monitor.

Tyson Foods, Inc., 126 S.Ct. 1195, (2006) (citing, with approval, this standard for demonstrating pretext when a Plaintiff claims superior qualifications). Nor could she make such a showing. See Def. Br. at 16-17.

The bottom line, as even Plaintiff now appears to recognize, is that Mr. King's initial judgment about the candidate's relative strengths was correct: Plaintiff and Mr. Kessler had roughly equal qualifications on paper. See, e.g., Def. Ex. 2 at 7. It is undisputed that the panelists believed Mr. Kessler interviewed significantly better, see Def. Ex. 10-D; Stevens Aff. at. 5, ¶ 15; Hallager Aff. at 3, ¶ 14.B; 4, ¶ 14.C; 5, ¶ 14.E.4, ¶ 15.d; Davenport Aff. at. 3, ¶ 14.A; 4, ¶ 14.E.4; 5, ¶ 15.d, and that they recommended him for the job. Mr. King, as he had determined to do, followed the panel's recommendation. Def. Ex. 2 at 11, ¶ 25.a. There is no basis upon which to second-guess that decision. See, e.g., Stewart, 352 F.3d at 429; Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) ("Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions'") (internal citation omitted).

    b. Panel Composition. Plaintiff notes (Pl. Br. at 7) that Ms. Stevens stated she has served on interview panels to "add diversity" to the panels. See Def. Ex. 3 at 2, ¶ 11.b. That fact has no conceivable bearing on whether Ms. Stevens, an African American female, discriminated against Plaintiff because of her race or sex. Nor, plainly, is there anything inappropriate about a diverse interview panel.

    c. Panel Scoring. Plaintiff's long argument (see Pl. Br. at 9-13) that the interview scoring was "arbitrary" and "subjective" is irrelevant and immaterial. As demonstrated above, Plaintiff has "no objective evidence" suggesting that the interview panel scored Plaintiff lower or

differently because of her race or sex. Brown, 2006 U.S. Dist. LEXIS 46069 at *20. The panelist's extensive interview notes speak for themselves, and show the panel members were attentive and engaged during the interviews. See Def. Ex. 10-D. Notwithstanding Plaintiff's suggestion otherwise (Pl. Br. at 10), there is nothing unusual or "farc[ical]" about rating candidate responses to interview questions on a scale of 1 to 5.

Plaintiff's argument (see Pl. Br. at 10-12) that the interview questions themselves were insufficiently related to the Biologist Position is equally misguided. The same questions were asked of both candidates, see Def. Statement ¶ 20 (Def. Br. at 9), and Plaintiff has no evidence suggesting that any particular question was picked because of Plaintiff's race or sex.[8] Again, "absent a 'demonstrably discriminatory motive,' this Court must defer to the agency's decision of what non-discriminatory qualities it deemed necessary" in filling the Biologist Position. Brown, 2006 U.S. Dist. LEXIS 46069 at *19.

d. Job Notices. Plaintiff notes (Pl. Br. at 14-15) that Mr. King brought a few job announcements to her attention. Plaintiff does not dispute, however, that she never told Mr. King this bothered her. See id. at 14. More importantly, Plaintiff has no objective evidence suggesting Mr. King brought job announcements to her because of her race or sex. See Def. Br. at 18-19 (explaining Mr. King's uncontroverted testimony with respect to why he shared job notices with Plaintiff). Plaintiff also does not allege that the interview panel was aware of Mr. King's conduct or that Mr. King's conduct had any impact on the panel's recommendation that

---

[8] Plaintiff's assertion (Pl. Statement ¶ 10) that Mr. King was "completely unable to articulate" how the interview questions "were related to the position for which Brown interviewed" is utterly meritless, as the interrogatory answer excerpted in Plaintiff's brief makes clear. See Pl. Br. at 11.

Mr. Kessler be hired. Mr. King's conduct in bringing job notices to Plaintiff's attention is immaterial to the issues in this lawsuit.

  e. <u>Alleged Comments About African Americans</u>. Plaintiff alleges that Mr. King "told Brown that he could not effectively communicate with African Americans and asked if she would review a letter that he proposed to write to black newspapers." Pl. Statement ¶ 16; Pl. Br. at 16. Plaintiff has not articulated how these comments are in any way relevant to the personnel decision at issue in this case which was indisputably governed by the panel's recommendation. <u>See</u> Pl. Br. at 17 (asserting only that "King assumed that because Brown is an African American she would be willing to listen to his insulting remarks about his inability to communicate with members of her race"). Indeed, as noted above, there was nothing improper about Mr. King stepping out of the interviewing process to avoid even the appearance of a possible bias on his part. Because Plaintiff does not allege that the interview panel was aware of the alleged comments or that the comments had any impact on the panel's recommendation that Mr. Kessler be hired, the alleged comments are immaterial to the issues in this lawsuit.[9]

  f. <u>Temporary Detail</u>. Plaintiff contends that the selection of Mr. Kessler for a temporary detail to the biologist position "gave Kessler a huge advantage over Brown in obtaining the permanent position." Pl. Statement ¶ 2; Pl. Br. at 17. Plaintiff cites no record support for that statement. <u>See</u> <u>id.</u> There is no support for it. <u>See</u> Def. Ex. 2 at 7-8. Plaintiff also notes that Mr.

---

[9] It bears noting that Plaintiff's counsel never asked Mr. King about these alleged comments at his deposition. Certainly, Mr. King denies making any of the statements attributed to him regarding communicating with African Americans, Plaintiff transferring to the Farm because of her race, or reviewing a draft letter to a Black newspaper, but at this point in the litigation, it would be superfluous to document this denial because the factual dispute over what he said is not material to resolution of this motion.

Kessler had taken course work prior to being selected for the detail, see Pl. Statement ¶ 2, but has no evidence that Mr. Kessler had received "the chance to participate in an appointment" with hands-on experience similar to the appointments Plaintiff and the other detail candidate had received. See Def. Ex. 2 at 7. For these reasons, and those explained at length in our opening brief (see Def. Br. at 19-21), Plaintiff has no evidence of discriminatory bias in the selection of Mr. Kessler for the detail.[10] Indeed, Defendant's selection of Kessler for the detail position was not even challenged in this case.

     g. Position Description. We addressed the bulk of Plaintiff's argument on this point (see Pl. Br. at 19-24) in Part I.e, supra. Plaintiff's contention that the research element was not part of the Biologist Position for which Plaintiff and Mr. Kessler applied simply misreads the relevant documents and is not supported by the record. See supra at 8-9 & n.6. There is "no objective evidence," per Brown, 2006 U.S. Dist. LEXIS 46069 at *20, that Mr. King's decision to update the Biologist Position description was anything other than an attempt to "revise[] and update[]" a description that was "written over 15 years previously." Def. Ex. 2 at 7.

---

    [10] Based on a single reference on one page of an apparently multi-page document, Plaintiff asserts Mr. Kessler had "assumed the title" of "Biologist, Small Mammal Unit" prior to his selection. See Pl. Statement ¶ 18. It is unclear who identified Mr. Kessler as such in the document (i.e., whether it was someone inside or outside the Zoo), or even if the document would be admissible evidence (as it must be to support an opposition to summary judgment). In any event, there is no evidence that Mr. Kessler was appointed to the Biologist Position until after the interviews, the panel recommendation, and his selection by Mr. King. See Def. Ex. 10-A. Plaintiff acknowledges this fact. See Pl. Br. at 4.

**CONCLUSION**

The undisputed material facts demonstrate that Plaintiff was simply unsuccessful in persuading a panel of interviewers she was more qualified than the other certified candidate for the Biologist Position. Mr. King, consistent with his prior decision, selected the candidate recommended by the interview panel. Although Plaintiff was not selected, she has not come forward with any evidence that she was discriminated against. Defendant's motion for summary judgment should be granted.

July 18, 2006                                   Respectfully submitted,

 

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

    /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

    /s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

OF COUNSEL:
CRAIG M. BLACKWELL
Assistant General Counsel
Smithsonian Institution
P.O. Box 23286
Washington, D.C. 20026-3286
blackwellc@si.edu