UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MELBA BROWN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1086 (RMU) |
| | : | | |
| v. | : | Document No.: | 9 |
| | : | | |
| LAWRENCE M. SMALL, | : | | |
| in his official capacity as | : | | |
| Secretary of the Smithsonian Institution, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

The plaintiff, an African-American female employee at the National Zoological Park ("the National Zoo"), brings suit against the defendant, the Secretary of the Smithsonian Institute,[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").  The plaintiff alleges that her supervisor at the National Zoo, motivated by racial and gender discrimination, selected a Caucasian male over the plaintiff for the position of biologist. The defendant claims that a neutral selection board evaluated the applicants and recommended the Caucasian male candidate for the position based on the candidates' respective qualifications and interview performance.  The defendant moves for summary judgment arguing that the plaintiff cannot show that it was motivated by racial or gender discrimination.  Because the court concludes that the plaintiff cannot prove that the defendant's rationale is a pretext for

---

[1] The plaintiff brings suit against Lawrence M. Small, the Secretary of the Smithsonian Institution, in his official capacity.  Compl. ¶¶ 6-7.  The Smithsonian Institution operates the National Zoological Park.

discrimination or that the defendant was motivated by racial or gender discrimination, the court grants the defendant's motion for summary judgment.

## II.   BACKGROUND

### A.   Factual History

The plaintiff has worked at the National Zoo since 1985 and has served as an Animal Keeper with the Small Mammal Unit for twelve years. Compl. ¶ 7. Robert King is a Caucasian male employed as the Assistant Curator and Supervisory Biologist of the Small Mammal Unit, and he was the plaintiff's supervisor during the period of time at issue in this suit. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 7; Pl.'s Opp'n to Def.'s Mot. for Summ. J ("Pl.'s Opp'n") at 1.

In April 2003, King announced a vacancy for the biologist position at the Small Mammal Unit and his plans to appoint someone to a temporary detail for the position. Def.'s Mot. at 2. Three employees – David Kessler, a Caucasian male, Angela Marlow, a Caucasian female, and the plaintiff – applied for the temporary position. Pl.'s Opp'n at 2. In June 2003, a panel consisting of Lisa Stevens, an African-American female, Belinda Resser, a Caucasian female, and King interviewed the three applicants for the position. *Id*. King considered all of the candidates to be qualified for the temporary position, but he allegedly selected Kessler for the detail because Kessler, unlike the other applicants, had never been afforded an opportunity to gain administrative skills. Def.'s Mot. at 2.

Once Kessler took the temporary biologist position, King told the plaintiff that he wanted her to transfer from the Small Mammal House to the Kid's Farm. Pl.'s Opp'n at 2. The plaintiff,

however, was interested in the permanent biologist position at the Small Mammal House and declined the transfer. *Id.*

In preparation for hiring a permanent biologist, King oversaw the drafting and the approval of the job announcement and crediting plan for the position. Def.'s Mot. at 3. He submitted the draft job announcement for review and input to Scarlitt Proctor, a Human Resources Specialist for the National Zoo. *Id.*; Pl.'s Ex. 7-8. On February 3, 2004, King posted the job announcement for the permanent biologist position as a Grade 9 job with potential promotion to Grade 11. Def.'s Mot. at 3; Def.'s Ex. 10-B. Both the plaintiff and Kessler applied for the position. Compl. ¶ 8; Def.'s Mot. at 3.

After the plaintiff applied for the biologist position, King questioned her twice more about transferring to the Kid's Farm. Pl.'s Opp'n at 3. He also informed the plaintiff that the individual hired for the biologist position must arrive at work at 6:30 a.m. to survey the collection, to lead a 6:40 a.m. staff meeting, and to perform other duties beginning around 7:10 a.m. Def.'s Mot. at 4; Pl.'s Opp'n at 3. King questioned whether the plaintiff would be able to work the hours required of the biologist because the plaintiff had previously requested an 8:00 a.m. to 4:30 p.m. shift to allow her to take her daughter to child care. Def.'s Mot. at 4; Def.'s Mot., Ex. 9; Pl.'s Opp'n at 3. He informed the plaintiff that "if she could not work the earlier shift, she would not be considered for the position and there was no need for her to go any further in the application process." Pl.'s Opp'n at 3. Subsequently, King informed the plaintiff that he wanted to detail her to the temporary biologist position. *Id.* King later learned from a department administrator that the plaintiff believed that King's questions regarding the plaintiff's child care were improper. Def.'s Mot., Ex. 4 at 8.

By February 23, 2004, the plaintiff and Kessler were the only two qualified applicants for the permanent biologist position. Def.'s Mot. at 4. King assembled an interview panel and a set of interview questions. Pl.'s Opp'n at 4; Def.'s Mot. at 4. King sent the draft questions to the panel members and to Proctor for review and input, Def.'s Mot. at 5, and he included in the interview sheets for both applicants a question regarding the applicants' ability to work the early shift, Def.'s Mot., Ex. 10-D.

Because of the plaintiff's concerns regarding King's question about the plaintiff's child care arrangements, King and his supervisors determined that King would not sit on the interview panel. Def.'s Mot. at 4. The panel consisted of Lisa Stevens, an African-American female and the Assistant Curator for Primates and Pandas; Michael Davenport, a Caucasian male and Assistant Curator; and Sara Hallager, a Caucasian female and a Museum Specialist at the Birds Unit. *Id.* at 5. King told the panel and his supervisors that he would follow the panel's recommendation in selecting the candidate to hire as biologist. *Id.*

The panel interviewed the plaintiff on March 11, 2004, and it interviewed Kessler on March 12, 2004. Pl.'s Opp'n at 4. The defendant asserts, and the plaintiff does not dispute, that the panel members gave Kessler higher overall scores than they gave the plaintiff. Def.'s Mot., Exs. 10-D & 10-E. King followed the recommendation of the panel and selected Kessler for the permanent biologist position. Def.'s Mot. at 6; Pl.'s Opp'n at 4.

The plaintiff received notice of her non-selection on March 22, 2004. Pl.'s Opp'n at 4. When she questioned King about the decision, he replied that the panel made an independent decision, and the plaintiff should seek explanations from the panel members. *Id.* The plaintiff then emailed each of the three panel members, asking them why she was not selected. *Id.*

Stevens replied that she felt that the plaintiff did not interview well for the job, did not provide very concise answers, and did not project a programmatic vision for the unit. *Id.*; Def.'s Mot., Ex. 3, p. 23 (email from Stevens to Brown). At King's request, the other two panel members withheld their response to the plaintiff's question until they received guidance from Proctor as to what they should or could say to the candidates regarding the selection process. Pl.'s Opp'n at 4-5; Def.'s Mot., Ex. 3-4.

The plaintiff filed a formal administrative charge of discrimination on June 9, 2004. Compl. ¶ 17. She received the Final Agency Decision on March 4, 2005. *Id.* ¶ 21.

### B. Procedural History

On June 1, 2005, the plaintiff brought this suit against the defendant, alleging that her non-selection for the biologist position constituted racial and gender discrimination in violation of Title VII. *Id.* ¶ 24. The defendant answered the plaintiff's complaint, asserting that it had legitimate, non-discriminatory reasons for its actions. Def.'s Ans. at 1. On June 5, 2006, the defendant filed a motion for summary judgment, alleging that the plaintiff was not selected because the panel gave higher scores to Kessler and that the plaintiff cannot present evidence that this reason is pretextual. Def.'s Mot. at 1. The plaintiff opposes the defendant's motion, maintaining that the selection process was a pretext for King's discriminatory motives. Pl.'s Opp'n at 1. The court now turns to the defendant's motion.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B.  The *McDonnell Douglas* Framework

To prevail on a claim of race or sex discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race or sex discrimination, the plaintiff must show that (1) she is a member of a protected class; (2) she was similarly situated to an employee who was not a member of the protected class; and (3) she and the similarly situated employee were treated disparately. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be

available to the plaintiff. *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### C. The Court Grants the Defendant's Motion for Summary Judgment

The defendant concedes that the plaintiff has established a prima facie case for race and gender discrimination. Def.'s Mot. at 13. But, the defendant argues that the plaintiff was not selected because Kessler's interview was superior to the plaintiff's and because the panel recommended Kessler for the position. *Id*. at 14. The plaintiff challenges this assertion, arguing that "the [d]efendant's proffered reason is a fabrication and a subterfuge for disguising King's actual discriminatory actions." Pl.'s Opp'n at 6.

The plaintiff now has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, [and this] merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. Accordingly, the court considers whether the defendant's rationale is a pretext for discrimination and, generally, whether the plaintiff has met her burden to "show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Lathram*, 336 F.3d at 1088 (citing *Aka*, 156 F.3d at 1290).

### 1.  The Plaintiff Cannot Show that the Defendant's
### Proffered Reason is a Pretext for Discrimination

The defendant argues that it did not select the plaintiff for the biologist position because she did not perform as well as her competitor, Kessler, during the interview process. Def.'s Mot. at 14. Moreover, the defendant asserts that the plaintiff cannot demonstrate that its explanation is a pretext for discrimination because the three-person panel that interviewed the applicants for the position included two women, one of whom is African-American, *id*., and because the plaintiff was not significantly better qualified for the position than Kessler, *id*. at 15. The plaintiff counters that King merely employed the interview panel to shield his discriminatory management and personnel decisions. Pl.'s Opp'n at 6.

The plaintiff can demonstrate that the employer's rationale is a pretext for discrimination by offering direct or circumstantial evidence that the defendant was motivated by either gender or racial discrimination. *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 149 (D.D.C. 1988). Still, she "must do more than just deny or criticize the proffered reasons of the defendant." *Id*. In an effort to meet this burden, the plaintiff points to the interview panel's composition, to the content of the interview, to Kessler's selection for the biologist position, and to certain statements by King. The court addresses each set of allegations in turn.

#### a.  The Panel Composition

The plaintiff first alleges that the composition of the interview panel – a Caucasian male, a Caucasian female, and an African-American female – is merely a "ploy" designed to "successfully stave off any claims of gender and/or race discrimination." Pl.'s Opp'n at 6-7. She states that King "confided" to the plaintiff that zoo management relies on Stevens, the African-American

female panelist, "in matters involving race" because she is the only African-American female employed in animal management. *Id*. at 7.  She posits that Stevens "enjoys her status as the Zoo's sole African-American female working in animal management, [and that] she may, in fact, be inclined to racially discriminate against [Brown] who threatens her unique position in the Zoo's managerial hierarchy." *Id.* at 7-8.

 The plaintiff's assertions that Stevens desired to retain this alleged position of influence fail to demonstrate racial or gender discrimination.  Speculation as to one panel member's hidden motives is insufficient to counter the defendant's explanation that the plaintiff was not the best qualified candidate for the position.  *Brown v. Small*, 437 F. Supp. 2d 125, 133 (D.D.C. 2006) (concluding that speculation that race factored into the defendant's employment decisions was inadequate to survive a motion for summary judgment).  Indeed, "[a] plaintiff cannot merely rest on bare allegations and hope to get an overly sympathetic jury to find pretext on its own; [s]he must present evidence . . . that may deny or rebut defendant's justification." *Bell v. Runyon*, 1997 U.S. Dist. LEXIS 10909, *7 (D.D.C. July 16, 1997).  The plaintiff here does no such thing, relying merely on her unsupported speculation that Stevens is "inclined to discriminate against her."  Therefore, the plaintiff has not met her burden to present "evidence from which the finder of fact could infer discrimination," *Brown*, 437 F. Supp. 2d at 132, and the plaintiff's challenge to the panel's composition fails.

### b.    The Interview

The plaintiff next challenges the defendant's interview questions and the manner in which the panel conducted the plaintiff's interview.  Pl.'s Opp'n at 8.  The plaintiff asserts that King hastily drafted the interview questions, and a human resources specialist did not approve the

11

questions until the plaintiff's interview was underway. Pl.'s Opp'n at 8-9. Indeed, 45 minutes prior to the plaintiff's interview, King sent two additional questions to human resources for approval and incorporation into the interview. *Id*. at 9.

The plaintiff also alleges that some of the interview questions posed bore no correlation to the duties of the biologist position. *Id*. at 10. For example, the plaintiff claims that the panel asked her to "explain the evolutionary tie between a ruffed lemur and a howler monkey." *Id*. The plaintiff challenges that the defendant has failed to "provide a cogent explanation for any of the fifteen questions that were posed during the interview," *id*. at 11, and "the [d]efendant has provided no list of correct answers or any evidence that such information was provided to the panelists,"[2] *id*. at 12. In addition, the plaintiff asserts that panel member Hallager stated that the plaintiff "was unable to satisfactorily answer many of the questions," but Hallager stated that she did not know the answers to the questions herself. *Id*. at 10. Finally, the plaintiff challenges the interview by asserting that King spoke with the panel prior to the plaintiff's interview, *id*. at 4, and that one of the panelists "disrupted" the plaintiff's interview by leaving the room to speak with Kessler "allegedly about rescheduling his interview," *id*. at 9.

These allegations suffer from the same deficiency as the plaintiff's allegations regarding the panel's composition: she fails to demonstrate that these events were tainted by discriminatory motives. *Fishbach v. Dist. Columbia Dept. of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). The plaintiff has, quite simply, alleged little more than that the interview process was disorganized.

---

[2] The court's review of the interview questions reveals that only three of the questions have "correct answers." Def.'s Mot. for Summ. J. ("Def.'s Mot."), Exs. 10-D, 10-E. The remaining 12 questions are open-ended, requiring the interviewee to discuss how she/he would handle various situations. *Id*.

Similarly, the plaintiff provides no explanation as to how King's speaking to the panel demonstrates discrimination of any kind. And, although the plaintiff may have been inconvenienced by King's speaking to the panel prior to her interview or by a panelist leaving the room to discuss scheduling with Kessler, the plaintiff has offered nothing upon which a jury could infer that these events were motivated by a discriminatory animus. *Brown*, 437 F. Supp. 2d 125; *see also Fishbach*, 86 F.3d at 1183 (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982)) (stating that "[e]ven if a court suspects that a job applicant 'was victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive'"). In sum, the set of events as alleged fails to undermine the defendant's explanation that Kessler was the more desirable candidate and fails to persuade the court that the defendant's rationale for hiring Kessler is a pretext for intentional discrimination against the plaintiff in the interview process. *Roberson v. Snow*, 404 F. Supp. 2d 79, 89 (D.D.C. 2005); *see e.g., Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 66-67 (D.D.C. 2006) (concluding that the defendant was not entitled to summary judgment because the plaintiff sufficiently undercut the defendant's explanation by producing some evidence of the defendant's "'shifting rationales' for replacing plaintiff" including disfavorable comments made by supervisors about the plaintiff).

### c.   Kessler's Selection

Not only does the plaintiff challenge the interview process, she argues that Kessler's eventual selection for the biologist position demonstrates King's discriminatory intent.[3] The plaintiff asserts that "[i]f, in fact, King believed that both candidates had almost equal experience in animal husbandry and [the plaintiff] had superior science education skills, [the plaintiff] should have been selected for the position because Kessler had no unique or special skill that was applicable" to the position. Pl.'s Opp'n at 23. The plaintiff also asserts that Kessler's professional qualifications are not superior to the plaintiff's in that they both hold undergraduate degrees, Kessler's in biology and the plaintiff's in zoology. *Id*. at 24.

To establish pretext, however, it is insufficient to merely "deny or criticize the proffered reasons of the defendant." *Vasilevsky*, 31 F. Supp. 2d at 149. Similarly, the plaintiff must do more than ask the court to second guess the defendant's hiring decision because "courts cannot permit themselves to be used as "super-personnel department[s] that reexamine[] an entity's business decision[s]." *Brown*, 437 F. Supp. 2d at 132 (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003)). Although the plaintiff alleges that Kessler bore no special skill that would provide him an advantage over the plaintiff, the plaintiff's assessment of the candidates' qualifications cannot demonstrate a pretext for discrimination. *Hammond v. Chao*, 383 F. Supp. 2d 47, 57 (D.D.C. 2005) (stating that "a plaintiff cannot satisfy her burden of demonstrating

---

[3]   The plaintiff also challenges that the panel's scoring of the interviewees' answers was "completely arbitrary and subjective." Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 9. The use of subjective questions during an interview, however, does not alone establish a pretext. *Antinori v. England*, 2004 U.S. Dist. LEXIS 28697, *18-19 (E.D.N.C. Aug. 18, 2004). Absent any additional evidence or argument of a discriminatory motive, the court declines to make the inferential leap required to conclude that the panel utilized subjective scoring to intentionally discriminate against the plaintiff.

pretext 'simply based on [her] own subjective assessment of [her] own performance'") (quoting *Waterhouse*, 124 F. Supp. 2d at 7); *see also Vasilevsky*, 31 F. Supp. 2d at 150 (stating that "[e]ven if the plaintiff did prove that she were better qualified that, without more, would indicate nothing more than the defendant made a faulty hiring decision"). Moreover, absent other evidence allowing a jury to infer discrimination, "slight questions of comparative qualifications" do not survive a motion for summary judgment. *Hammond*, 383 F. Supp. 2d at 57 (quoting *Walker v. Dalton*, 94 F. Supp. 2d 8, 16 (D.D.C. 2000)).

### d. King's Statements

Finally, the plaintiff asserts that King made a number of statements which evidence both gender and racial discrimination. Pl.'s Opp'n at 15-16. The defendant does not deny that King made the comments, but it disputes that they establish a discriminatory motive for the plaintiff's non-selection. Def.'s Reply at 13.

The plaintiff may, indeed, survive a motion for summary judgment by producing evidence of "crude, derogatory, and highly offensive remarks about [the plaintiff's] gender and ethnicity." *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). Regarding racial discrimination, the plaintiff quotes King as expressing a belief in his inability to "effectively communicate with African-Americans" and asking her to edit his writing to that effect. Pl.'s Opp'n at 16. Regarding gender discrimination, the plaintiff points only to King's question regarding the plaintiff's ability to work the early shift as required by the biologist position, in light of her child care needs for her young daughter. *Id*. at 14. King concedes that he questioned the plaintiff about her child care

arrangements and stated that she need not pursue the biologist position if she could not meet the hours required.[4] *Id*. at 15.

Although the statements cited may have been offensive to the plaintiff, they fall short of being "crude, derogatory, and highly offensive" so as to demonstrate either gender or racial animus. *See e.g. Dunaway v. Int'l Bd. of Teamsters*, 310 F.3d 758, 764-65 (D.C. Cir. 2002) (concluding that the plaintiff adequately demonstrated a pretext for discrimination by proffering "comments about her national origin and gender, and comments directly related to the termination of her employment," including statements employing phrases such as "China Doll" and "Little Gook" and statements that women "should either be on their backs or on their knees scrubbing floors"); *Phelan*, 463 F.3d at 782 (concluding that the plaintiff had produced sufficient evidence to survive summary judgment where the record contained "numerous gender-related comments" including a co-worker's statement that the "workplace was 'no place for a woman'"); *Volvosek v. Wisc. Dept. of Ag., Trade, and Consumer Protection*, 344 F.3d 680, 689-90 (7th Cir. 2003) (concluding that a supervisor's statement about "keeping [women] barefoot and pregnant" contributed to the plaintiff's showing of discriminatory intent). However insensitive or thoughtless King's comments may be, they fail to persuade the court that the defendant's rationale for not selecting the plaintiff is a pretext for discrimination.

---

[4] The plaintiff also makes much of the fact that King periodically sent the plaintiff job notices both within and outside of the National Zoo. Pl.'s Opp'n at 14-15. King concedes this fact, but he asserts that his intention was to further the plaintiff's interest in education. Def.'s Mot., Ex. 4 (King Aff.) at 9-10. Although the plaintiff characterizes King's actions as discriminatory, she does not argue how it demonstrates intentional discrimination on the part of King. Pl.'s Opp'n at 14. The court concludes that without any argument or evidence to link King's actions to a discriminatory intent, this allegation is inadequate to demonstrate pretext. *Holcomb v. Powell*, 433 F.3d 889, 899 (D.C. Cir. 2006); *Brown v. Small*, 437 F. Supp. 2d 125, 133 (D.D.C. 2006); *see also Green v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

The plaintiff has failed to show that the defendant has falsely proffered its rationale that, in the opinion of the interview panel, Kessler interviewed better than the plaintiff and was more qualified for the job. *Fishbach*, 86 F.3d at 1183 (stating that "the issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers"). Because the plaintiff fails to show a "demonstrably discriminatory motive, this Court must defer to the agency's decision of what non-discriminatory qualities it deemed necessary [for the position]." *Brown*, 437 F. Supp. 2d at 133 (quoting *Fischbach*, 86 F.3d at 1183).

### 2. The Plaintiff Fails to Demonstrate Discrimination

Although the plaintiff has not shown that the defendant's hiring decision was a pretext for discrimination, the court steps back to consider whether the plaintiff has shown that "a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Brown*, 437 F. Supp. 2d at 131 (citing *Aka*, 156 F.3d at 1290). A plaintiff can demonstrate that the employer was motivated by discrimination by showing that "the jury could infer discrimination from a combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Aka*, 156 F.3d at 1289. But, the plaintiff need not produce direct proof of a discriminatory intent. *Id*. at 1292 (citing *United States Postal Service v. Aikens*, 460 U.S. 711, 714 n.3 (1983)). She may survive a motion for summary judgment by offering evidence including "discriminatory statements by the employer or other attitudes suggesting the decision maker harbors discriminatory animus as well as data

[demonstrating discriminatory hiring pattern]." *Holcomb*, 433 F.3d at 899 (internal citations omitted).

      Here, the plaintiff has offered no such evidence.  As discussed, the plaintiff brings a number of conclusory allegations challenging the hiring process for the biologist position as pretextual, but she produces no evidence that she suffered from racial or gender discrimination.  She alleges that King gave the plaintiff notices of other job postings, Pl.'s Opp'n at 14-15, that he questioned the plaintiff about whether her child care arrangements would affect her work schedule, *id*. at 3, that he assembled interview questions at the last minute and spoke to the interview panel immediately before the plaintiff's interview, *id*. at 4, 8-9.  Taken together, the allegations are insufficient to demonstrate that King acted with a discriminatory intent.  Put simply, the plaintiff paints a picture of thoughtlessness and disorganization, not discrimination, and her allegations as to King's possible prejudices remain conclusory.  As such, there is insufficient evidence on which a reasonable jury could conclude that the plaintiff suffered from discrimination.  *Holcomb*, 433 F.3d at 901 (concluding that the plaintiff's allegations were insufficient to survive summary judgment because "[t]o conclude that discriminatory animus motivated the remaining claims to which [the plaintiff alluded would be] to go far beyond reasonable inference and into the realm of unfettered speculation").

## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of January, 2007.

                                                          RICARDO M. URBINA
                                                          United States District Judge